IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAN GOODRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV02-181-C-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| RALPH TOWNSEND, PHIL | ) | |
| FOSTER, ERIC MACEACHERN | ) | |
| LAWANDA THOMASON, STEVE | ) | |
| CHRISTENSEN, LISA CATES, | ) | |
| LT. MCKENZIE, CPL. HASLETT, | ) | |
| C.O. WOLFINGER, and C.O. | ) | |
| WILSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The issue to be resolved in this lawsuit is whether prison officials violated an

inmate's Eighth Amendment rights when they failed to provide sanitary conditions

for inmate hair cutting.  The following motions are pending in this case: (1)

Plaintiff's Motion for Contempt (Docket No. 194); (2) Defendants' Motion for

Extension of Time (Docket No. 196); (3) Plaintiff's Motion to Produce (Docket

No. 199); (4) Defendants' Motion to Supplement Response (Docket No. 201);(5)

Defendants' Motion for Summary Judgment (Docket No. 207); (6) Plaintiff's

Motion for Summary Judgment (Docket No. 210); and (7) Defendants' Motion for

Leave to File Overlength Brief (Docket No. 215).        After reviewing the

**ORDER  1**

record and pending motions in the case, the Court has decided that oral argument would not significantly assist the Court in resolving the outstanding issues, and Counsel for the parties did not request it.  Therefore, the Court will make its ruling based on the record before it.  The Court has determined that Plaintiff is entitled to summary judgment on his Eighth Amendment claim.  Defendants are entitled to summary judgment on Plaintiff's injunctive relief claim.  Plaintiff will also be directed to file an amended complaint in his retaliation case, CV04-436-C-EJL, adding the claim that his legal materials were allegedly confiscated and destroyed when he attend a settlement conference.

### PROCEDURAL HISTORY

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC).  His Complaint alleged two separate Eighth Amendment claims.  The first claim alleged that he contracted the hepatitis C virus as a result of unsafe barbering practices at the Idaho Correctional Institution at Orofino (ICI-O).  Plaintiff's second claim alleged that Defendants violated his Eighth Amendment rights by failing to comply with the standards set forth in the Idaho barbering statutes.

Based on Plaintiff's allegation that the failure to provide proper disinfection of barbering equipment caused him to contract a life-threatening illness, the Court appointed Dr. Scott Allen as the Court's expert pursuant to Federal Rule of

**ORDER  2**

Evidence 706.  Dr. Allen is the former Medical Director for the Rhode Island Department of Correction, and he has conducted studies relating to hepatitis C infection rates among inmate populations.  Dr. Allen was directed to provide his opinion on the causal connection between the conditions surrounding the barbering practices at ICI-O and Plaintiff's allegation that he contracted Hepatitis C as a result of the barbering practices.  Dr. Allen concluded that it was more likely Plaintiff had contracted the Hepatitis C virus through means other than the unsanitary barbering equipment.

After Dr. Allen's report was received, the parties attended a settlement conference on June 6, 2005 before the Honorable James Fitzgerald.  An agreement was reached at the settlement conference that Plaintiff's first Eighth Amendment claim, relating to the hepatitis C infection, would be dismissed with prejudice against all Defendants.  Plaintiff elected to proceed with the second claim in which he alleges that there was an unsafe condition at ICI-O, arising out of unsanitary barbering practices.

The Court appointed counsel for Plaintiff on August 30, 2005 for the purpose of assisting Plaintiff in preparing a Motion for Summary Judgment on his remaining Eighth Amendment claim.  Defendants filed a cross-Motion for Summary Judgment, and these motions are currently pending before the Court.

**ORDER  3**

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of  identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv*., 809 F.2d at 630 (internal citation omitted).

**ORDER  4**

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party, and all inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). The Court is required, however, to determine whether the evidence set forth meets the requirements of Rule 56(c) and (e). In so doing, the Court is to look at admissibility of the *content* of the evidence, rather than the admissibility of the *form* of the evidence. *See Fonseca v. Sysco Food Service of Arizona*, 374 F.3d 840, 846 (9th Cir. 2004); *Block v. City of Los Angeles,* 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."). Declarations that contain hearsay are admissible for summary judgment purposes if they "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in

**ORDER 5**

support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

### UNDISPUTED FACTS

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC).  He filed a Complaint in state court in March of 2002.  The Complaint was removed to federal court in April of 2002.  *Docket No. 1*.  At the time the allegations in the Complaint arose, Plaintiff was incarcerated at ICI-O.  Plaintiff was a barber at ICI-O, and he informed Defendants that he did not have the equipment and supplies necessary to sanitize the tools and combs used to cut inmates' hair.  Plaintiff complained about the lack of sanitization for barbering equipment to Defendants McKenzie, Haslett, and Wolfinger.  *Amended Complaint*, p. 11.  Plaintiff sent a grievance to Defendants Thomason, MacEachern and Foster, attaching a copy of the inmate concern form sent to Defendant McKenzie.  Plaintiff wrote a letter to Defendant Foster, Warden at
ICI-O, complaining about the sterilization and sanitation issue.  *Id.*, p. 11, 13.  He also sent a letter addressed to various Defendants, including Defendant Townsend, Director of the Idaho Board of Correction, informing them that the barbering practices at ICI-O violated Idaho barbering statutes.  *Id.*, p. 44.

**ORDER  6**

Another inmate barber used the barbering equipment to cut hair from December 2001 to May 2002, and he did not have a way to sterilize and sanitize the barber clippers, clipper heads, combs, and scissors after the equipment was used on inmates. *Affidavit of Rick Runells*, Docket No. 6; *see also Affidavit of Curt Davis*, Docket No. 6, p. 37 (stating that he was not provided with a way to sterilize barbering equipment at ICI-O). In May of 2002, the inmate barber was given a sterilizer, rubber gloves and liquid soap to use in his job as the inmate barber. *Id.*, p. 27.

Plaintiff complained to Defendants that the barbering practices for inmates at ICI-O violated the state court decision of *Wilson v. State*, 113 Idaho 563, 746 P.2d 1022 (Ct. App. 1987), in which IDOC officials were informed that the Idaho correctional institutions are required to provide basic sanitation for hair cutting. The opinion held that the concept of basic sanitation incorporates "each of the health-related safeguards contained in the regulations appended to our opinion." *Id.* at 1026 ("prison's refusal to comply with duly promulgated health regulations raises a bona fide Eighth Amendment issue."). The regulations of the Idaho Board of Barber Examiners were attached in an appendix to the opinion. *Id.* at 1027. The appendix sets forth the following regulations:

> 4. INSTRUMENT CLEANING. Razors, combs,
> brushes, cutting heads of clipping machines, and all other instruments

**ORDER  7**

used by operators upon customer shall be thoroughly cleaned after each usage.  Every precaution must be used to prohibit the transfer of bacteria, material and arthropods from one person to another by means of instruments.  Instruments to be cleaned prior to storage.

     5.  INSTRUMENT SANITIZING.  Instruments must be sanitized after cleaning previous to use on each patron.  This may be done by boiling the instruments in water for two minutes or totally immersing the instruments in an approved sanitizing solution for not less than two minutes.

The Idaho court of appeals opinion also states

"that the Board of Barber Examiners did not have prison security in mind when it promulgated these health standards.  The special demands of prison administration may require flexibility in implementing the standards.  Accordingly, we authorize the magistrate to adjust the standards incorporated into his order, upon a showing of good cause."

*Id*. at 1026.  The case was remanded to the magistrate "for such further proceedings as the magistrate may deem necessary."  *Id*. at 1027.  There is nothing in the record to indicate that any further proceedings were conducted in the case.

In December of 2003, the IDOC adopted Directive 305 which makes the barbering practices consistent throughout the IDOC system.  *Docket No. 207-3*, p. 2.  The Directive was designed to create safe and sanitary hair cutting practices in line with the rules of the State Barbering and Cosmetology Board.  *Copeland Affidavit*, *Docket No. 134*.  The Directive must be followed at all IDOC facilities and by IDOC supervisors and employees.  *Id*., ¶ 14.

**ORDER  8**

Directive 305 requires that each IDOC facility have a designated area for hair cutting, but does not require the creation of a barbershop at the facility.  The inmate barbers wear standard clothing for their particular incarceration housing assignment.  *Id.*, 21-22.  The Directive also provides for (1) screening of inmate barber applicants for blood-borne and infectious diseases; (2) locating hair cutting areas next to a sink with hot and cold running water; (3) preventing hair cutting in areas closer than ten feet from where food is consumed; (4) providing for disposal of waste materials containing blood; (5) providing equipment, supplies, and barbering tools; (6) training inmate barbers in safety and sanitation procedures; (7) creating procedures for cleaning and sanitizing equipment; (8) and implementing inspection and oversight procedures.  *Id.*, Exhibit A.

Inmate barbers at ICI-O are either screened through a job application process or are screened to be a volunteer barber.  *Scheller Affidavit*, ¶ 4-10.  They attend a class during which they are trained to follow Directive 305 and are given a checklist of instructions.  *Id.*, ¶ 11-14.

After Directive 305 was implemented, IDOC officials established designated places in the ICI-O units where hair cutting would take place.  A-Block units have a designated area near the sink and toilets where hair is cut.  McKelway Hall units have a designated hair cutting area in the bathrooms.  *Id.*, ¶ 20-24.  Barbering

**ORDER  9**

equipment for A-Block units is stored in a locked metal cabinet when not in use, and the equipment for McKelway Hall units is stored in a closet on one of the units.  *Id*.  The equipment for the therapeutic community unit in McKelway Hall is stored in the unit office.  *Id*., ¶ 25.

Barbering supplies for the ICI-O units includes sanitizing agents described as Barbicide and Clippercide.  One is used for submersible equipment, and the other is sprayed on equipment such as electric clippers.  Inmate barbers are trained to follow the manufacturer's instructions regarding the use of the sanitizing agents.  *Id*., ¶ 30.  Each unit is also provided with re-usable nylon capes, disposable sanitary neckbands, tissue, and disposable gloves for the inmate barbers.  Inmate barbers are instructed to wear their own clean clothing while hair cutting.  *Id*., ¶ 30.

Defendants requested that Budd Hetrick, Deputy Bureau Chief of the Idaho Bureau of Occupational Licenses, review IDOC Directive 305.  Mr. Hetrick also worked as a professional barber for several years, prior to his work with the Occupational Licensing Bureau.  *Hettrick Affidavit*, ¶ 2-6.  Mr. Hettrick provided his opinion that Directive 305 is compatible with the regulations appended to the *Wilson* decision.  He believes that Directive 305 addresses the issues relating to safeguards for public health and safety as set forth in the Idaho barbering regulations.  *Id*., ¶ 13.  Nothing in the record indicates that Mr. Hettrick actually

**ORDER  10**

inspected the designated hair cutting areas, equipment storage, and barbering

supplies at ICI-O.

Plaintiff reported to Defendants that he suffers from psoriasis, dandruff, and

scabs on his scalp. *Docket No. 128, Exhibit C (Plaintiff's Deposition Tr.*, p. 101).

A physician employed by the IDOC to treat inmates at ICI-O, provided his opinion

that psoriasis, dandruff, and seborrheic dermatitis, are not transmitted from one

person to another through use of common barbering equipment. *Affidavit of Dr.*

*Robert Hill*, ¶ 7.

Plaintiff was moved to a different IDOC facility in February of 2006.

*Docket No. 220* (Plaintiff's Notice of Change of Address to IMSI).

**DISCUSSION**

To state a claim under § 1983, a plaintiff must allege a violation of rights

protected by the Constitution or created by federal statute proximately caused by

conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d

1418, 1420 (9th Cir. 1991). "A person 'subjects' another to the deprivation of a

constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that causes the deprivation of which complaint is made."

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1987). "The requisite causal

**ORDER  11**

connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. at 743-44.

To state a claim under the Eighth Amendment, Plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must also show that Defendants were deliberately indifferent to the substantial risk of serious harm. Deliberate indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws the inference. *Id.,* 511 U.S. at 837.

While working as an inmate barber at ICI-O, Plaintiff informed Defendants McKenzie, Haslett, Wolfinger, Thomason, MacEachern and Foster of the unsanitary conditions surrounding inmate hair cutting practices. Plaintiff also sent a letter to Warden Foster and Defendant Townsend, specifically referring to *Wilson v. State of Idaho.* Therefore, Defendants were notified of the Idaho court of appeals conclusion that "[e]ven without proof that current hair cutting procedures actually have contributed to the spread of communicable diseases, . . . the prison's

**ORDER  12**

refusal to comply with duly promulgated health regulations raises a bona fide Eighth Amendment issue."   *Wilson v. State*, 746 P.2d at 1026.  Plaintiff has supplied the requisite causal connection between Defendants' actions and the civil rights violation.

Defendants argue that the *Wilson* case did not clearly establish the Eighth Amendment standard for barbering practices at IDOC facilities.  However, the *Wilson* decision specifically states that the IDOC did not appeal from the magistrate judge's order that the prison facility provide the means to sanitize barbering instruments and avoid cutting hair in places where food is eaten or served.  *Id*. at 1025.  Between this statement and the appendix attached to the decision, containing sanitation regulations, it is obvious that the Eighth Amendment standard relating to the public health issues surrounding inmate hair cutting was provided to Defendants in 1987.

Defendants' Statement of Material and Undisputed Facts begins with the assertion that IDOC Directive 305, adopted in December of 2003, adequately adopts and implements the Eighth Amendment standard in the *Wilson* case. *Docket No. 207*, ¶ 2-10.  Therefore, as a direct result of Mr. Goodrick's lawsuit, the IDOC implemented a policy for safe barbering practices at the Orofino facility.

Defendants' claim that ICI-O had a guideline from its private medical

**ORDER  13**

provider, Correctional Medical Services which was used to train inmate barbers. *See Docket No. 131, Exhibit C.*  There is no evidence that the inmate barbers were actually trained in the sanitation guidelines set forth in the document, nor is there any evidence that the necessary sanitation supplies were actually given to inmate barbers.  Therefore, the IDOC's primary defense to Plaintiff's Eighth Amendment claim is the creation, adoption, and implementation of adequate sanitation practices after Plaintiff filed his lawsuit.

Based on the record before it, Defendants have not identified specific facts showing that there is a genuine issue of material fact requiring a trial in this matter. *See Celotex*, 377 U.S. at 322.  The elements of Plaintiff's Eighth Amendment claim are clearly supported by the record, and he is entitled to a judgment as a matter of law.  The extent to which Plaintiff suffered actual, compensable damages due to the Eighth Amendment violation is not present in the record.  In the Amended Complaint, Plaintiff requested "Compensatory Damages for the compensable injuries he has and continues to suffer with a reasonable certainty." *Amended Complaint,* p. 17-18.   The record does not demonstrate that Plaintiff suffered any physical harm as a result of the Eighth Amendment violation.  S*ee Carey v. Piphus*, 435 U.S. 247, 254 (1978)("the abstract value of a constitutional right may not form the basis for § 1983 damages.").

**ORDER  14**

In *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002), the Ninth Circuit Court of Appeals stated that where a plaintiff had failed to make an adequate showing of physical injury that precluded a compensatory damages claim, it did not preclude the prisoner from pursuing a nominal damages claim for the civil rights violation. *Oliver v. Keller*, 289 F.3d at 629-30.  Based on the Eighth Amendment violation, the Court will provide for a nominal damages award of $10.00 to Plaintiff.  Plaintiff's lawsuit was the catalyst for change at ICI-O, resulting in the creation and implementation of a policy governing sanitary inmate hair cutting.  Accordingly, he is entitled to the nominal damages award.

In Defendants' cross-Motion for Summary Judgment, they argue that Plaintiff is not entitled to the entry of injunctive relief on his Eighth Amendment claim.  They assert that the adoption of Directive 305 has alleviated the need for further intervention in the barbering practices at ICI-O.  The Court observes that Plaintiff brought this lawsuit as an individual, and he is no longer incarcerated at ICI-O.  Therefore, it appears that there are limits on what type of relief can be accorded to Plaintiff.

In *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1990), the Ninth Circuit held that an inmate could not claim injunctive relief for his prison conditions claims after he was transferred to a different facility and no longer had a direct

**ORDER  15**

threat of injury.  The inmate must show that he is in actual danger of sustaining a direct injury from the challenged official conduct.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  Plaintiff can no longer make the required showing.

The Court is concerned that the IDOC's adoption of Directive 305 lacks an inspection and enforcement mechanism.  Plaintiff raised these issues in his Response to Defendants' Motion for Summary Judgment when he requested (1) a quarterly inspection by the Board of Barber Examiners of the designated hair cutting sites at ICI-O; (2) weekly inspections of the barbering equipment and hair cutting sites by the prison medical provider; and (3) the filing and retention of these inspection reports with the Warden at ICI-O.  Although it appears that Directive 305 adequately addresses the sanitation standards set forth in *Wilson*, one correctional officer appears to be solely responsible for the continued implementation and enforcement of the Directive.  The lack of independent inspection of the hair cutting conditions appears to open the door for further issues relating to sanitation standards at ICI-O.

In the event the sanitation issue arises in a new lawsuit filed by either Plaintiff or another inmate at ICI-O, the Court will consider the appointment of a special master to inspect and investigate the sanitation conditions for inmate hair cutting at ICI-O.  The Court is hopeful that no further issues arising from the

**ORDER  16**

sanitation conditions will be necessary in light of the present ruling.

### OTHER PENDING MOTIONS

Before being provided with counsel, Plaintiff filed a motion requesting that Defendants be held in contempt for the alleged confiscation and destruction of his legal materials when he was transferred to Boise for a settlement conference. Defendants requested additional time within which to respond to Plaintiff's allegations of contempt.  Plaintiff also filed a discovery motion, requesting production of specific documents.  After Plaintiff's counsel was appointed, he sent discovery requests on Plaintiff's behalf.

Based on the Court's ruling in this action, it will deny the additional pending motions in this case.  Plaintiff is advised that the allegations relating to the alleged confiscation and destruction of legal materials may be included in his   retaliation claim, CV04-436-C-EJL.  The allegations relating to his legal materials support the claim that he was retaliated against for filing his lawsuits against the IDOC.

Finally, Defendants requested leave to file an overlength Statement of Material and Undisputed Facts which the Court will grant.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for

**ORDER  17**

Summary Judgment (Docket No. 210) is GRANTED as set forth above.  Judgment shall be entered on Plaintiff's Eighth Amendment claim in the amount of $10.00.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 207) is GRANTED in part and DENIED in part as set forth above.

IT IS FURTHER HEREBY ORDERED that the additional pending motions (Docket Nos. 194, 196, 199, and 201) are DENIED and (Docket No. 215) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the Court's appointment of the law firm of Holland & Hart as counsel for Plaintiff pursuant to the Court's Pro Bono Program is hereby withdrawn.

DATED:  **March 30, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**ORDER  18**